CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 18 2020

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

BRADLEY R. HUMPHRIES,    )
              )
  Plaintiff,      )  Civil Action No. 7:18CV00380
              )
v.           )  **MEMORANDUM OPINION**
              )
COMMISSIONER, SOCIAL SECURITY )  By: Hon. Glen E. Conrad
ADMINISTRATION,     )  Senior United States District Judge
              )
  Defendant.     )

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 1381–1383f. Jurisdiction of this court is established pursuant to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g).

By order entered May 20, 2019, the court referred this case to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). On February 6, 2020, the magistrate judge submitted a report in which he recommends that the Commissioner's final decision be affirmed. Plaintiff has filed objections to the magistrate judge's report, and the matter is now ripe for the court's consideration.

This court is charged with performing a de novo review of the magistrate judge's report and recommendation. See 28 U.S.C. § 636(b)(1). In the instant case, the court's review is limited to a determination as to whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Bradley R. Humphries, was born on October 30, 1994. Mr. Humphries was first identified as having significant learning disabilities while in elementary school. (Tr. 273, 278). He was transferred to alternative placements for middle school, including Rivermont, a day treatment facility for students with special needs. (Tr. 278). In 2013, Mr. Humphries graduated from high school with an Individual Education Plan (IEP) diploma. (Tr. 254). After graduation, he attended a vocational program through the Roanoke County Public Schools and the Virginia Department for Aging and Rehabilitative Services (DARS). (Tr. 273).

In February of 2015, while continuing to receive vocational rehabilitation services, Mr. Humphries began working as an electrician's helper at Shively Electric, where he was supervised by his father. (Tr. 542). Mr. Humphries remained in that position until August of 2016. (Tr. 66). The Administrative Law Judge determined that Mr. Humphries' employment during the second, third, and fourth quarters of 2015 reached the level of substantial gainful activity, but that there were continuous twelve-month periods following the alleged onset of disability during which Mr. Humphries did not engage in substantial gainful activity. (Tr. 17–18).

On September 19, 2014, Mr. Humphries protectively filed an application for supplemental security income benefits. (Tr. 171). In filing his current claim, Mr. Humphries alleged that he became disabled for all forms of substantial gainful employment on November 21, 2011, due to a learning disability, attention deficit disorder (ADD), and attention deficit hyperactivity disorder (ADHD). (Tr. 173, 197). Mr. Humphries now maintains that he has remained disabled to the present time.

Mr. Humphries' application was denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated July 20, 2017, the Law Judge also determined, after applying the five-step

sequential evaluation process, that Mr. Humphries is not disabled. See 20 C.F.R. § 416.920.[1]

The Law Judge found that Mr. Humphries suffers from several severe impairments, including a

learning disability, ADHD, and anxiety, but that these impairments do not, either individually or in

combination, meet or medically equal the requirements of a listed impairment. (Tr. 18). The

Law Judge then assessed Mr. Humphries' residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform a full range of work at all exertional levels but with the
> following non-exertional limitations: Claimant is limited to simple
> routine tasks of a repetitive nature with few work place changes.
> Claimant is to have no work activity that would require a fast pace
> production rate, such as that found with respect to quotas, piecework
> or timed work. Claimant has the capacity to engage in no more
> than occasional simple decision making with respect to
> work-related activities. Claimant should not interact with the
> public except for incidental contact such as with someone
> requesting directions to a bathroom or a department within a store.
> Furthermore, claimant is able to have no more than occasional
> interaction with co-workers and supervisors and is not to engage in
> group, team or tandem activities. Claimant is to be provided
> instructions by demonstration only and is not to engage in work
> requiring mathematical calculations or financial transactions.
> Claimant is not to engage in work activities that would require
> preparation of reports such as checklist[s] or those in a narrative
> fashion.

(Tr. 22). Given such a residual functional capacity, and after considering testimony from a

vocational expert, the Law Judge determined that Mr. Humphries is unable to perform his past

relevant work as an electrician's helper. (Tr. 24). However, the Law Judge found that Mr.

Humphries retains sufficient functional capacity to perform other work roles existing in significant

number in the national economy, including the unskilled occupations of hand packager,

---

[1] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work in the national economy. 20 C.F.R. § 416.920. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

cleaner/janitor, and laundry worker. (Tr. 25). Accordingly, the Law Judge concluded that Mr. Humphries is not disabled, and that he is not entitled to supplemental security income benefits. See generally 20 C.F.R. § 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Humphries has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 1382c(a). These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of physicians and other medical sources; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

As previously noted, the court referred this case to a magistrate judge for a report setting forth findings of fact, conclusions of law, and a recommended disposition. In his report, the magistrate judge recommended that the court affirm the final decision of the Commissioner denying Mr. Humphries' claim for supplemental security income benefits. Succinctly stated, the magistrate judge determined that substantial evidence supports the Law Judge's finding that Mr. Humphries retains the residual functional capacity to perform certain unskilled work roles and is therefore not disabled under the Social Security Act.

In his objections to the report and recommendation, plaintiff argues, inter alia, that the Law Judge erred in assessing his residual functional capacity. After reviewing the record and

considering the parties' arguments, the court finds "good cause" to remand the case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g).

The record establishes that Mr. Humphries has cognitive and emotional impairments that significantly affect his ability to function. As indicated above, Mr. Humphries received special education services in school and ultimately obtained an IEP diploma. A school psychological report indicates that Mr. Humphries underwent "multiple, comprehensive psychoeducational assessments" during his tenure, and that his "cognitive scores . . . consistently [fell] in the very low to below average range." (Tr. 282). In February of 2015, Lin Shaner, a licensed professional counselor, performed a psychological evaluation at the request of a DARS counselor, which included intelligence and achievement testing. Based on the test results, Ms. Shaner opined that plaintiff "has extremely limited academic skills and appears to have a learning disability in all three academic areas." (Tr. 454). Ms. Shaner also noted that Mr. Humphries "definitely has ADHD," and that he is "very anxious," "easily distracted, impulsive[,] and easily overwhelmed." (Tr. 454). Records from Mr. Humphries' primary care physicians also reflect diagnoses of ADHD, behavior disorder, anxiety, depression, adjustment disorder, and possible personality disorder. (Tr. 445, 464, 466, 467, 476).

The record contains multiple opinions and assessments regarding the impact of Mr. Humphries' impairments on his ability to work. In April of 2012, Mr. Humphries was referred to Dennis Stephenson, a DARS evaluator, for a comprehensive vocational assessment. (Tr. 324). Based on the assessment, Mr. Stephenson expressed the belief that Mr. Humphries "would have difficulty functioning in a competitive work environment." (Tr. 326). Mr. Stephenson further opined that if Mr. Humphries was able to benefit from vocational services and become ready for employment, he would "need supported employment services." (Tr. 326).

5

In July of 2012, Mr. Humphries was referred for a comprehensive vocational evaluation at Woodrow Wilson Rehabilitation Center (WWRC). (Tr. 391). The six-day program included an assessment of plaintiff's ability to engage in production and cleaning work. (Tr. 399). Mr. Humphries' case manager recommended that he "participate in a supported employment placement or a receive services from a job coach" if he elected to attempt production work. (Tr. 399). Similarly, based on plaintiff's performance during a cleaning evaluation, his case manager recommended that he "consider job placement with the initial assistance of a job coach." (Tr. 399).

In January of 2014, Mr. Humphries returned to WWRC to participate in a nine-week life skills transition program. (Tr. 387). After completing a two-day orientation program, Mr. Humphries "decided to self-terminate his program before life skills classes actually began." (Tr. 387). Mr. Humphries' rehabilitation counselor noted that "he did not appear to believe in his ability to be independent and function without a significant amount of assistance/support," and that he "presented as highly reliant on his mother." (Tr. 387). The counselor further observed that plaintiff's "self-limiting behavior and dependence present a significant barrier" to his success. (Tr. 387).

Over the course of the following year, Mr. Humphries received job development and training services through DARS, which included an internship in the housekeeping department at a local Holiday Inn. (Tr. 532). Reports from DARS reveal that plaintiff had "difficulties taking the instructor['s] verbal instruction" and sometimes could not "be located at all." (Tr. 534). Mr. Humphries "did not achieve independent success during the . . . training program hosted at the Holiday Inn and had to return to Goodwill's warehouse to complete the . . . training program." (Tr. 537). Mr. Humphries remained in the DARS program until May of 2015. (Tr. 543). At

that point, Mr. Humphries had been assisting his father at Shively Electric for over 90 days and agreed to close his case with DARS. (Tr. 543). Mr. Humphries continued to work with his father until August of 2016. (Tr. 85). According to the hearing testimony, plaintiff's job at Shively Electric ended because he and his father were unable to work together, he was easily distracted, and his father could not "keep him on task." (Tr. 67, 85).

Prior to working with his father, Mr. Humphries underwent the psychological evaluation performed by Lin Shaner. (Tr. 455). Based on the evaluation, Ms. Shaner opined that Mr. Humphries would "most likely need close supervision when learning a job in the competitive job market." (Tr. 455). Ms. Shaner noted that it would be "important for [plaintiff's] father to work closely with his Rehabilitation Counselor, Job Coach or therapist," who could assist plaintiff "with making the transition to competitive employment." (Tr. 455).

The state agency psychologists, Dr. Joseph Leizer and Dr. Linda Dougherty, completed two forms regarding plaintiff's mental health: a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment form. On the first form, both psychologists noted that plaintiff has moderate difficulties in maintaining social functioning, and in maintaining concentration, persistence or pace. (Tr. 106, 119). On the second form, both psychologists opined that Mr. Humphries has moderate limitations in the categories of "sustained concentration and persistence" and "social interaction." (Tr. 107–08, 121–22). Among other limitations, both psychologists noted that Mr. Humphries' "ability to sustain an ordinary routine without special supervision" is moderately limited, as his is ability to accept instructions from supervisors. (Tr. 107–08, 121–22).

The Law Judge ultimately concluded that Mr. Humphries' cognitive and emotional impairments do not render him disabled for all forms of substantial gainful employment. In

assessing plaintiff's residual functional capacity (RFC), the Law Judge gave "moderate weight" to the opinions of the state agency psychologists. (Tr. 23–24). The Law Judge also "considered" the opinions from other service providers, including Ms. Shaner and Mr. Stephenson. (Tr. 24). The Law Judge determined that Mr. Humphries "is able to meet the basic demands [of] work with certain additional non-exertional limitations in place (as set forth in the RFC) on a sustained and continuing basis despite the limitations resulting from his impairments." (Tr. 24).

Upon review of the record, the court is unable to conclude that the Law Judge's assessment of Mr. Humphries' RFC is supported by substantial evidence. In assessing a claimant's RFC, the Law Judge considers "all the relevant evidence," medical or otherwise, to determine a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 416.945(a)(4). The Law Judge "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p, 1996 SSR LEXIS 5, 61 Fed. Reg. 34,474, 34,478 (July 2, 1996)). In other words, the Law Judge "must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). If the Law Judge fails to adequately explain how he reached conclusions regarding the claimant's RFC, remand is appropriate. See Mascio, 780 F.3d at 636; see also Monroe, 826 F.3d at 188 ("[W]e have held that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contrary evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.") (internal quotation marks omitted).

In the court's view, the difficulty with the Law Judge's assessment of plaintiff's RFC is that he failed to adequately address the evidence indicating that Mr. Humphries would need special supervision or assistance to sustain employment. The record reveals that Mr. Humphries required extensive vocational rehabilitation services as a result of his impairments, and the opinion evidence suggests that "special supervision" may be necessary in a competitive work environment, either in the form of "supported employment" services or a "job coach." (Tr. 108, 121, 326, 399, 455). Indeed, the Law Judge himself acknowledged that Mr. Humphries has required special accommodations, including a job coach, to complete assigned tasks. (See Tr. 19 ("As for working, claimant does show an ability to apply instructions in a work setting if the setting is closely structured or overseen by a work coach."); Tr. 23 ("Claimant has been found to be able to complete tasks if given accommodations such as . . . confirmation of understanding from a supervisor or job coach.") (citing the reports from Ms. Shaner and Mr. Stephenson)). Nonetheless, the Law Judge did not include any limitation reflecting the need for special supervision in the RFC assessment or explain why such limitation was unnecessary.[2] Nor did he explain how the limitations included in the RFC assessment sufficiently accommodated plaintiff's moderate difficulties sustaining an ordinary work routine without special supervision. In the absence of such explanations, the court is constrained to conclude that remand is warranted under the particular circumstances of this case.

For the reasons stated, the court finds "good cause" to remand this case to the Commissioner for further development and consideration.[3] If the Commissioner is unable to

---

[2] To the contrary, the Law Judge indicated that Mr. Humphries should have only "occasional interaction" with supervisors. (Tr. 22).

[3] In light of the court's decision to remand the case to the Commissioner, the court declines to address Mr. Humphries' remaining claims of error.

decide the case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing at which both sides will be allowed to present additional evidence and argument. An appropriate order of remand will be entered this day.

The Clerk is directed to send copies of this memorandum opinion to all counsel of record.

DATED: This 18th day of March, 2020.

_____
Senior United States District Judge